UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
RONALD DOLGINKO,                                :
                                                :
                Plaintiff,    :
                                                :
     -against-                                :    **MEMORANDUM AND ORDER**
                                                :    23-cv-1300 (DLI)(MMH)
LONG ISLAND RAIL ROAD and                       :
METROPOLITAN TRANSIT AUTHORITY,                 :
                                                :
                Defendants.   :
-----------------------------------------------------------------x

**DORA L. IRIZARRY, United States District Judge:**

On February 17, 2023, Plaintiff Ronald Dolginko ("Plaintiff") brought this action against Defendants Long Island Rail Road (the "LIRR") and Metropolitan Transit Authority ("the MTA") (collectively, "Defendants"), with the International Brotherhood of Electrical Workers, Local 589 (the "IBEW") as a party in interest, alleging violations of his Constitutional rights pursuant to 42 U.S.C. § 1983. Plaintiff asserts that Defendants, under the color of law, subjected him to an unlawful search in the form of a drug test in order for him to return to work following medical leave, and, when he tested positive for a controlled substance, caused his termination from employment. *See generally*, Compl., Dkt. Entry No. 1.

Defendants moved to dismiss the Complaint ("Motion") for lack of standing under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure and for punitive damages. *See*, Defs.' Mot. ("Mot."), Dkt. Entry No. 9. Plaintiff opposed, but conceded that punitive damages are not available. *See*, Pl.'s Opp. to Mot. ("Opp."), Dkt. Entry No. 10. Defendants replied. *See*, Defs.' Reply ("Reply"), Dkt. Entry No. 11.

For the reasons set forth below, Defendants' motion is granted in its entirety.

## BACKGROUND[1]

The LIRR is a public benefit corporation and subsidiary of the MTA, and is a carrier subject to the Railway Labor Act ("RLA"), 45 U.S.C. § 151 et seq. The MTA also is a public benefit corporation created by the State of New York and "regarded as performing an essential governmental function." *See*, N.Y. Pub. Auth. L. §§ 1263, 1264, 1266. The IBEW is a labor organization and the duly authorized bargaining representative for employees in the title of electrician employed by the LIRR. 45 U.S.C. § 151. The IBEW, on behalf of its member employees, entered into a collective bargaining agreement ("CBA") with the LIRR. Mot. 2; Compl. ¶ 16. The CBA governed Plaintiff's terms of employment. Mot. 2; Compl. ¶ 16.

The CBA provides that covered employees "who are off duty on account of sickness or personal injury not connected with railroad service more than fifteen (15) workdays, exclusive of relief days or vacation, will be required to secure a return-to-duty card before being permitted to return to work." *See*, Pl.'s Ex. A at 78 ("Appendix H"). Additionally, "[t]he doctor's examination of the employee who is required to take a physical examination in connection with securing a return-to-duty card, will be confined to the illness or personal injury not connected with railroad service which caused him to be off duty." *Id.*

The LIRR supplemented the CBA with a Drug and Alcohol Policy ("Policy") that imposes testing requirements on different categories of employees for different circumstances. *See*, Defs.' Ex. 1. For example, drug and alcohol testing is required or permitted, among other circumstances: (1) prior to employment; (2) based on reasonable suspicion; (3) following accidents; (4) or on a random basis. Defs.' Ex. 1 at 7-8 (Section VI(A)). In pertinent part, employees classified as safety

---

[1] The facts below are taken from the Complaint and any incorporated documents. They are accepted as true as required at this stage of the case.

2

sensitive[2] "are subject to Return-to-Duty testing under LIRR authority." Defs.' Ex. 1 at 18 (Section VI(C)(10)(c)). Safety sensitive employees "who have been absent from work for any reason for thirty (30) calendar days or more will be subject to drug and/or alcohol testing. This will be performed as part of a Return-to-Duty physical examination when applicable." Defs.' Ex. 1 at 16 (Section VI(B)(10)). Non-safety sensitive employees are not subject to this same Return-to-Duty testing requirement. Defs.' Ex. 1 at 18 (Section VI(C)(10)(d)). They are subject to the testing requirement only "when specified *following a violation of LIRR policy*." *Id.* (emphasis added).

Prior to his termination, Plaintiff was employed as an electrician by the LIRR. Mot. 2; Compl. ¶¶ 5, 13. Plaintiff contends that he was employed in a "non-safety sensitive position of electrician" out of the Queens LIRR warehouse. Compl. ¶ 13. His duties allegedly consisted of "almost exclusively dealing with union related matters, acting as his union's on-site representative." Compl. ¶ 14. "On an occasional basis, only during overtime hours, Dolginko would perform repairs of equipment. Neither the Union related duties nor the repair duties were safety sensitive positions." *Id.* Defendants counter that he was a safety sensitive employee. Mot. 2; Defs.' Ex. 2 at 7.

Plaintiff suffered a physical disability in July 2021 that required him to take a medical leave of absence. Compl. ¶ 17. Upon recovery, and as provided by the terms of the CBA, Plaintiff sought reinstatement to his position with the LIRR, which it conditioned upon his submission to a physical examination and a drug and alcohol test. Compl. ¶ 19. The LIRR claimed that the condition was permitted pursuant to the CBA and its authority. *Id.*

Plaintiff's drug test detected the presence of "Marijuana Metabolites." Compl. ¶ 27; Mot.

---

[2] The Policy outlines four categories of employees, three of which are safety sensitive, even though there is a separate category for "Safety Sensitive Employees."

3

3. As a result, the LIRR did not reinstate him to his former position. Compl. ¶ 29. Plaintiff grieved the LIRR's actions to a tripartite arbitration panel, the Special Board of Adjustment ("SBA"), pursuant to the CBA's terms. Compl. ¶ 30. The SBA sustained the LIRR's right to conduct the drug test and the decision not to reinstate Plaintiff to his position. Compl. ¶ 31. Among other things, the SBA found that the CBA's silence on the issue of toxicological testing did not preclude the LIRR from conducting drug tests in accordance with the Policy. Defs.' Ex. 2 at 6-7. The SBA noted that "any question regarding the constitutionality of the Carrier's policies is not reviewable by the Board. Interpretation or application of federal or state laws are best left to the court." Compl. ¶ 31; Defs.' Ex. 2 at 7.

## LEGAL STANDARD

Defendants move to dismiss for lack of standing under Federal Rules of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction and 12(b)(6) for failure to state a claim. Standing challenges may be brought under both rules, although "the proper procedural route [for such a challenge] is a motion under Rule 12(b)(1)." *All. for Env't Renewal, Inc. v. Pyramid Crossgates Co.*, 436 F.3d 82, 89 n. 6 (2d Cir. 2006) (internal citations omitted). "The distinction is important because a typical dismissal under Rule 12(b)(6) . . . is an adjudication on the merits with preclusive effect." *Id.*

Subject matter jurisdiction is a threshold issue. Thus, where a party moves to dismiss under both Rules 12(b)(1) and 12(b)(6), the court first must address the 12(b)(1) motion. *Sherman v. Black,* 510 F. Supp.2d 193, 197 (E.D.N.Y. 2007) (citing *Rhulen Agency, Inc. v. Alabama Ins. Guar. Ass'n,* 896 F.2d 674, 678 (2d Cir. 1990)). It is axiomatic "that federal courts are courts of limited jurisdiction and lack the power to disregard such limits as have been imposed by the Constitution or Congress." *Durant, Nichols, Houston, Hodgson & Cortese-Costa P.C. v. Dupont*, 565 F.3d 56,

4

62 (2d Cir. 2009) (quotation marks omitted). "If subject matter jurisdiction is lacking and no party has called the matter to the court's attention, the court has the duty to dismiss the action *sua sponte*." *Id*.

In reviewing Rule 12(b)(1) motions to dismiss based on insufficiency of the complaint, the court must accept as true all material factual allegations of the complaint and draw all reasonable inferences in favor of the plaintiff. *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 57 (2d Cir. 2016) (relying on *Lunney v. United States*, 319 F.3d 550, 554 (2d Cir. 2003). The court's task is to "determine whether the pleading alleges facts that affirmatively and plausibly suggest that the plaintiff has standing to sue." *Id.* (quotation marks and alterations omitted).

To survive a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The plausibility standard "does not require 'detailed factual allegations,' but it demands more than . . . unadorned, the-defendant-unlawfully-harmed-me accusation[s]." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555).

In deciding a motion to dismiss pursuant to Rule 12(b)(6), the court accepts as true all well pled factual allegations and draws all reasonable inferences in the plaintiff's favor. *LaFaro v. N.Y. Cardiothoracic Grp., PLLC*, 570 F.3d 471, 475 (2d Cir. 2009) (citations omitted). Nevertheless, "threadbare recitals of the elements of a cause of action" that are supported by "conclusory" statements and mere speculation are inadequate and subject to dismissal. *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) (internal quotation marks and citation omitted); *See also*, *Iqbal*, 556 U.S. at 678 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. . . . Pleadings that are no more than conclusions are not entitled to the assumption of truth.") (internal quotation marks and modifications omitted).

**DISCUSSION**

Defendants move to dismiss the complaint for lack of subject matter jurisdiction and for failure to state a claim, both of which are based on Plaintiff's lack of standing. Defendants contend that Plaintiff lacks standing to assert a facial challenge to the Policy's constitutionality because the IBEW consented to the search on behalf of its constituents. Courts in this Circuit have long held that unions can consent to searches through collective bargaining agreements. In *Romano v. Canuteson*, the Second Circuit reaffirmed that "due process requirements are not of controlling relevance if the party seeking to assert them has waived them in a voluntary agreement such as a collective bargaining agreement." 11 F.3d 1140, 1141 (2d Cir. 1993) (affirming state employee's termination without prior hearing because the procedure accorded with the collective bargaining agreement). Plaintiffs have been found to lack standing to facial challenges to drug testing policies when unions, as employees' exclusive bargaining agents, have "waived certain of its members' rights." *Ware v. City of Buffalo*, 186 F. Supp.2d 324, 336-38 (W.D.N.Y. 2001).

Although not binding on this Court, the Third Circuit's analysis in *Bolden v. SEPTA*, 953 F.2d 807 (3d Cir. 1991) is persuasive. The Court also notes a lack of contrary authority in this Circuit. The *Bolden* court recognized that, "[i]f individual public employees may litigate such questions despite the resolution reached through collective bargaining, the utility of collective bargaining with respect to drug testing in the public sector would be greatly diminished." *Id.* at 828. Despite Fourth Amendment implications, "a public employee union acting as the exclusive bargaining agent may consent to drug testing on behalf of the employees it represents." *Id.*

There is no dispute that Plaintiff was an employee governed by the CBA that was agreed to between the LIRR and the IBEW. *See*, Compl. ¶ 16; Mot. 2. Rule 58 and Appendix H of the CBA require physical examinations prior to an employee's return to work. *See*, Pl.'s Ex. A at 25,

78. Although the CBA is silent on the point of toxicological testing, the SBA rejected the argument that the CBA's language precluded drug testing pursuant to the Policy. The SBA found that there was no "limitation on [the LIRR's] discretion to implement policies or procedures requiring employees to undergo a toxicological test when appearing for a return-to-work physical examination. Legions of arbitration awards in the industry have found that[,] where not expressly limited by the Agreement, or in some cases by a mutually accepted and binding past practice, the Carrier [*i.e.*, the LIRR] has unfettered discretion to implement rules and policies of its operation." Defs.' Ex. 2 at 5-6. Consequently, the SBA found that the CBA does not preclude the LIRR from conducting such drug tests in order for employees to return to duty. *Id.* at 5-7.

Moreover, the LIRR's longstanding "practice, usage and custom" with respect to the Policy reflected the IBEW's implied consent to the drug test. *See, Consol. Rail Corp. v. Ry. Lab. Executives' Ass'n*, 491 U.S. 299, 311 (1989). The SBA found there to be a "long-standing custom and practice" by which the LIRR implemented its Policy for over twenty (20) years without objection by the IBEW. Defs.' Ex. 2 at 6. The IBEW's long silence as to the LIRR's implementation of the Policy is significant. Other courts have found that such "implied authorization . . . must bind individual employees as surely as an express term." *Bolden,* 953 F.2d at 828. As the Third Circuit observed, "if the union agrees, or if binding arbitration establishes, that the collective bargaining agreement impliedly authorizes drug testing, individual employees are bound by this interpretation unless they can show a breach of the duty of fair representation." *Id.*

Notably, under the circumstances of this case, the SBA's decision is binding on this Court. Judicial review of the SBA's decision "is limited to three specific grounds: (1) failure of the Adjustment Board to comply with the requirements of the Railway Labor Act; (2) failure of the

7

Adjustment Board to conform, or confine, itself to matters within the scope of its jurisdiction; and (3) fraud or corruption. . . . Only upon one or more of these bases may a court set aside an order of the Adjustment Board." *Union Pac. R. Co. v. Sheehan*, 439 U.S. 89, 93 (1978) (citing 42 U.S.C. § 153). None of these rounds apply here. Accordingly, the SBA decision "is final and binding upon the parties." *Id.* at 95.

The parties dispute concerning Plaintiff's status as a safety sensitive employee has no bearing on the foregoing analysis. Plaintiff does not contend that the SBA improperly found him to be a safety sensitive employee or that the Policy was applied improperly as to him. As noted above, the Court is bound by the SBA's finding that Plaintiff was a safety sensitive employee. Furthermore, the Second Circuit has held that "a reviewing court is bound by the arbitrator's factual findings, interpretation of the contract and suggested remedies." *Loc. 97, Int'l Bhd. of Elec. Workers, A.F.L.-C.I.O. v. Niagara Mohawk Power Corp.*, 196 F.3d 117, 124 (2d Cir. 1999) (citing *United Paperworkers Int'l Union v. Misco, Inc.,* 484 U.S. 29, 37–38 (1987)) (in the context of an arbitration award). "To resolve disputes about the application of a collective-bargaining agreement, an arbitrator must find facts and a court may not reject those findings simply because it disagrees with them." *United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 38 (1987).

Plaintiff's other arguments are unavailing. Changes to New York state's laws regarding marijuana has no bearing on the issue of implied consent or standing. *See*, Opp. 11-12. Furthermore, the SBA's abstention from addressing the constitutionality of the Policy as beyond its authority does not automatically confer standing on Plaintiff to raise the claim here.

As there was implied consent to the drug test in accord with the CBA and longstanding practice of the LIRR, Plaintiff lacks standing to challenge the Policy's constitutionality and this

8

Court lacks subject matter jurisdiction to adjudicate this matter. As the *Ware* court stated, "Plaintiff should raise any dissatisfaction with the agreement with his union, not with defendants." 186 F.Supp. 2d at 338. Finally, lacking subject matter jurisdiction, this Court "lacks the power to adjudicate the merits of the case" pursuant to Rule 12(b)(6). *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 54-55 (2d Cir. 2016) (internal citations omitted).

## CONCLUSION

Defendants' motion to dismiss this action is granted in its entirety for the reasons set forth above. Plaintiff's claim for punitive damages is unavailable here as a matter of law, which Plaintiff concedes. Consequently, that claim is dismissed with prejudice. The remainder of the Complaint is dismissed, without prejudice, for lack of subject matter jurisdiction.

SO ORDERED.

Dated: Brooklyn, New York
　　　　March 26, 2024

　　　　　　　　　　　　　　　　　　　　　　　　　　　　/s/
　　　　　　　　　　　　　　　　　　　　　　　　　DORA L. IRIZARRY
　　　　　　　　　　　　　　　　　　　　　　　United States District Judge